1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LILIYA BULGAKOV,                          No.  2:20-cv-2031-EFB

12              Plaintiff,

13         v.                                    ORDER

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19    denying her application for disability benefits under Titles II and XVI of the Social Security Act.

20    ECF No. 1.  The parties' cross-motions for summary judgment are pending.  ECF Nos. 16, 18.

21    For the reasons provided below, the Commissioner's motion for summary judgment is granted

22    and plaintiff's motion for summary judgment is denied.

23    **I.      Background**

24         In February 2019, plaintiff applied for disability insurance benefits (DIB) and

25    supplemental security income (SSI) under Titles II and XVI of the Social Security Act

26    (Act), alleging that she became disabled on October 2, 2017.[1]  ECF No. 11-1, Administrative

27    ───────────────

28         [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
      Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to

1

1    Record ("AR") 173-89.  Plaintiff's applications were denied initially and upon reconsideration.

2    AR 69-70, 95-96.  Plaintiff appeared for a hearing before administrative law judge John Loughlin

3    on June 29, 2020, represented by non-attorney Svetlana Kumansky.  AR 31-49.

4           Plaintiff testified at the hearing.  AR 35-44.  She informed the ALJ that she had previously

5    worked as a bookkeeper but had not worked since February or March 2019 because she had

6    become unreliable since her brain surgery following an aneurysm in October 2017.  *Id.*  She had

7    missed work, made "really bad mistakes" that cost the company a lot of money, and couldn't

8    concentrate because of her pain and medication side effects.  AR 37-38.  She had problems

9    concentrating, was tired all the time, and suffered migraines almost every day that made her

10   nauseous and dizzy.  AR 38.  When she had a migraine, she had to go to a dark room and lie

11   down to wait for the medicine to work.  *Id.*  The medicine took 30 minutes to work but left her

12

13   disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is
     defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically
14   determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A
     five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A),
15   416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

16
          Step one: Is the claimant engaging in substantial gainful activity? If so, the
17        claimant is found not disabled. If not, proceed to step two.

18
          Step two: Does the claimant have a "severe" impairment? If so, proceed to step
19        three. If not, then a finding of not disabled is appropriate.

20        Step three: Does the claimant's impairment or combination of impairments meet
          or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the
21        claimant is automatically determined disabled. If not, proceed to step four.

22
          Step four: Is the claimant capable of performing his past work? If so, the claimant
23        is not disabled. If not, proceed to step five.

24        Step five: Does the claimant have the residual functional capacity to perform any
          other work? If so, the claimant is not disabled. If not, the claimant is disabled.
25

26   *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

27   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.
     *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation
28   process proceeds to step five.  *Id.*

                                                    2

1    feeling tired and dizzy.  *Id.*  Plaintiff couldn't work the way she used to before her aneurysm

2    because she was now unfocused and didn't understand what she was doing, sometimes forgetting

3    what she was doing mid-task.  AR 39.  She rarely did chores and only left her house for small

4    errands.  AR 41.  Although she had no restrictions on her driver's license, she avoided the

5    freeway because it made her too nervous to drive there.  AR 42.  She frequently got lost when

6    driving and sometimes forgot to pay her bills.  AR 42-43.

7            Vocational expert Valerie Allen testified that plaintiff's past relevant work was as a

8    bookkeeper.  AR 44-48.  The ALJ presented her with two hypotheticals and asked for her

9    opinions based thereon.  AR 46-48.  In the first, the ALJ asked Allen to

10           assume an individual the claimant's age, education, and work experience can
             perform work at the light exertional level, except the individual can occasionally
11           stoop, kneel, crouch and crawl; can occasionally climb stairs and ramps; can
             occasionally climb ladders, ropes and scaffolds; and can occasionally be exposed
12           to vibrations, unprotected heights, and moving machinery parts.  The individual
             requires a moderate noise work environment as defined in the DOT and the SCO;
13           and occasional exposure to extreme heat and humidity.  The individual is able to
             understand and remember simple instructions; make simple work-related
14           decisions; carry out simple instructions; can occasionally deal with changes in
             routine work setting; and can occasionally deal with coworkers and the public.
15           Would this individual be able to perform claimant's past relevant work?

16   AR 46.  Allen responded that such an individual would not be able to work as a bookkeeper, but

17   could do other jobs such as mail sorter, merchandise marker, and photocopy operator.  AR 46-47.

18   In the second hypothetical, the ALJ asked Allen to make the same assumptions as the first, except

19   to assume that the individual needs occasional reminders from supervisors; would be off task

20   more than 20% of the workday; and would be absent from work two or more days per month.

21   AR 47.  Allen responded that such an individual would not be able to perform any job in the

22   national economy.  AR 47-48.

23           The record contained plaintiff's medical history since 2015 and the opinions of

24   psychologist Michelina Regazzi and physician Sanford Selcon (consultants hired by the

25   Administration), as well as plaintiff's treating neurologist, Vladimir Rafanov.  In addition, state

26   agency medical and psychological consultants provided disability opinions based on reviews of

27   the record.  AR 54-56, 64-66, 77-80, 89-92.

28   /////

                                              3

1        The record revealed that plaintiff was admitted to the hospital in October 2017 with a

2    subarachnoid hemorrhage (aneurysm) that was treated with "surgical clipping."  AR 296.

3    Following surgery, plaintiff recovered well, but reported occasional mild dizziness and headaches

4    that waxed and waned through the day.  *Id.*  On December 28, 2017, her gross cognitive functions

5    were normal, and she was awake, alert, well-oriented, and in no distress.  *Id.*  On January 22,

6    2018, plaintiff was doing well, but reported occasional tension-type headaches.  AR 299.  On

7    February 14, 2019, plaintiff reported using Tylenol and aspirin to treat her headaches with a good

8    response.  AR 349.  But on July 1, 2019, plaintiff complained of near-daily headaches and

9    memory problems and sought referral to a neurologist.  AR 336-40.  In the years following her

10    aneurysm, plaintiff was also treated for depression.  AR 324-25, 451.

11        Plaintiff was seen by Dr. Rafanov on October 1, 2019.  AR 422-24.  Her neurological

12    exam was normal except for mildly-impaired short-term memory.  *Id.*  Her psychiatric exam was

13    also normal, including "normal attention span and concentration," although Dr. Rafanov also

14    noted unspecified attention and concentration deficits.  AR 424.  At her appointments with Dr.

15    Rafanov on November 4, 2019, January 15, 2020, and March 5, 2020, plaintiff continued to have

16    a normal neurological exam, except for mildly-impaired short-term memory and the same

17    notation of unspecified attention and concentration deficits.  AR 414-21.

18        Dr. Rafanov completed a couple of forms related to plaintiff's disability claims in May

19    and June 2020. AR 447-50.  He wrote that plaintiff could occasionally lift 10 pounds and

20    frequently lift less than 10 pounds.  AR 447.  In Dr. Rafanov's opinion, she could stand and walk

21    less than two hours in a workday due to "impaired balance and stamina."  *Id.*  She could sit for

22    less than six hours per workday due to "fatigability since the stroke."  *Id.*  She could never climb,

23    balance, stoop, kneel, crouch or crawl but could frequently feel with her fingertips and

24    occasionally reach, handle, and finger.  AR 448.  She was restricted from heights, moving

25    machinery, and temperature extremes.  *Id.*  Her understanding, remembering, and applying

26    information abilities were moderately limited.  AR 450.  Her abilities to interact with others,

27    adapt, and manage herself were also moderately limited.  *Id.*  Her abilities to concentrate, persist,

28    and maintain pace were markedly limited.  *Id.*

1    Dr. Regazzi examined plaintiff on May 10, 2019.  AR 308-12.  Plaintiff arrived on time,

2  having driven herself to the appointment.  AR 308.  She was professionally dressed and interacted

3  appropriately.  *Id.*  She reported that she was always tired and had headaches and memory

4  problems following her brain surgery.  *Id.*  She found everyday tasks overwhelming.  *Id.*  On

5  examination, plaintiff's concentration was adequate; she could do reverse serial threes from 100

6  to 88.  AR 310.  Her attention was also adequate; she could recite five digits forward and two

7  backward.  *Id.*  Her memory was fair; she could remember one of three words after a brief delay.

8  *Id.*  She exhibited linear thought processes, and her thought content was normal.  AR 311.

9    From a psychological standpoint alone (not considering physical impairments), Dr.

10  Regazzi found that plaintiff was mildly limited in performing detailed and complex tasks and in

11  her ability to complete a normal workday or workweek without interruptions caused by her

12  psychological conditions.  AR 311-12.  She was not significantly limited in her abilities to

13  regularly attend work, perform work activities consistently, accept instructions from supervisors,

14  and interact with coworkers and the public.  *Id.*  She was unimpaired in her ability to work

15  without special or additional supervision.  *Id.*  She was moderately limited in her ability to deal

16  with usual work stresses.  *Id.*

17    Plaintiff also drove herself to her appointment with Dr. Selcon on May 14, 2019.  AR 314.

18  He found her physical examination normal, and opined that she could stand and walk, or stay

19  seated, for six hours of an eight-hour day; could lift and carry 10 pounds frequently and 20

20  pounds infrequently; could stoop, kneel, crouch, and climb occasionally; and could reach and

21  grasp.  AR 315-17.  In Dr. Selcon's opinion, plaintiff had no visual communicative or workplace

22  environment limitations.  *Id.*

23    Also in May 2019, state agency medical consultant Leigh McCary, M.D., and state agency

24  psychological consultant Mark Gilson, Ph.D., found plaintiff's mental and physical impairments

25  not severe, meaning that her impairment or combination of impairments did not significantly limit

26  her physical or mental ability to do basic work activities.  AR 54-56, 64-66.  In August 2019,

27  psychological consultant Hillary Weiss, Ph.D., found Plaintiff's mental impairments not severe.

28  /////

5

1    AR 77-78, 89-90.  State agency medical consultant Roberta Herman, M.D., found that Plaintiff

2    must avoid concentrated exposure to noise and hazards due to her headaches.  AR 79-80, 91-92.

3         On July 7, 2020, the ALJ found plaintiff not disabled at step five of the disability

4    determination process, because plaintiff had the residual functional capacity to perform jobs such

5    as mail sorter, merchandise marker, and photocopy operator.  AR 12-30.  The ALJ's decision

6    became the final decision of the Commissioner of Social Security after the Appeals Council

7    denied plaintiff's request for review.  AR 1-6.  Plaintiff filed this action pursuant to 42 U.S.C.

8    § 405(g).

9    **II.     Standard of Review**

10        The court will uphold the Commissioner's decision that a claimant is not disabled if

11   substantial evidence in the record supports the Commissioner's findings of fact and the

12   Commissioner applied the proper legal standards.  *Schneider v. Comm'r of the SSA*, 223 F.3d 968,

13   973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v.*

14   *Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

15        The findings of the Commissioner as to any fact, if supported by substantial evidence, are

16   conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

17   more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th

18   Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

19   conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

20   *NLRB,* 305 U.S. 197, 229 (1938)).

21        "The ALJ is responsible for determining credibility, resolving conflicts in medical

22   testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

23   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

24   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

25   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

26   **III.    Analysis**

27        Plaintiff argues that the case should be remanded because (1) the copy of the ALJ decision

28   initially provided to her was missing page eight; (2) the ALJ failed to conduct a required further

6

1    inquiry after finding that two medical opinions were vague; and (3) the combination of the two

2    errors.

      **A.   Page Eight**

4          When the Commissioner initially provided the ALJ's adverse decision to plaintiff, page

5    eight was blank other than a notation: "Error Rendering Page."  Plaintiff attempts to cast this

6    simple administrative error, which could have easily been remedied by plaintiff inquiring after

7    page eight, as a denial of due process.  The argument, while earnestly presented in three pages of

8    briefing, is so silly that it merits no discussion.  It suffices to say that the court agrees with

9    defendant that the error was harmless.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A

10   decision of the ALJ will not be reversed for errors that are harmless.").

      **B.   ALJ Duty to Inquire Further**

12         "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for

13   proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."

14   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Plaintiff argues that the ALJ, after

15   finding that the opinions of Drs. Regazzi and Rafanov were vague in their failure to use the

16   "vocationally-relevant language necessary to determine a function-by-function residual functional

17   capacity" (ECF No. 11-1, AR 24) had a duty to conduct a further inquiry into whether plaintiff's

18   stroke caused her to suffer brain damage.  However, the ALJ's conclusion that these opinions

19   were vague regarding precise residual functional capacity language is not the same as concluding

20   that the evidence was ambiguous or the record inadequate regarding plaintiff's cognitive

21   functioning.  In fact, in *Ford v. Saul*, the U.S. Court of Appeals for the Ninth Circuit found that

22   the ALJ's duty to further develop the record was not triggered despite a medical opinion that

23   lacked specificity regarding residual functional capacity where the ALJ had years of health

24   records and multiple medical opinions to inform her analysis.  950 F.3d 1141, 1156 (9th Cir.

25   2020).  This case presents a materially-indistinguishable set of facts – although the ALJ found

26   that the residual functional capacity language (or lack thereof) in the opinions of Drs. Regazzi and

27   Rafanov created some vagueness in their opinions, he had years of plaintiff's health records and

28   /////

1   many medical opinions about her physical, mental, and cognitive functioning to inform his

2   decision.

3          Plaintiff also argues that the ALJ lacked clear and convincing evidence for disbelieving

4   plaintiff's testimony as to the severity of her cognitive impairments and thus should have sought

5   further evidence concerning her cognitive functioning.  Where a claimant's testimony regarding

6   the severity of her symptoms is medically supported, the ALJ may reject it only with specific,

7   clear and convincing reasons.  *Moore v. Comm'r of SSA*, 278 F.3d 920, 924 (9th Cir. 2002).

8   Here, plaintiff's testimony regarding her cognitive deficits had some support in the opinion of Dr.

9   Rafanov, her treating neurologist.  However, the ALJ found Dr. Rafanov's opinion less than

10  helpful, as it was provided on a check-the-box form with scant explanations for the options

11  selected.  ECF No. 11-1, AR 24, 447-50.  Moreover, Dr. Rafanov's opinion was contradicted by

12  his own chart notations indicating that plaintiff's cognitive functioning was largely normal

13  (except for some loss of short-term memory function), Dr. Regazzi's opinion that her cognitive

14  abilities were adequate, and chart notations from various other care providers indicating normal

15  neurological exams.  *Id.*, AR 296, 310-11, 412, 414-24.  *See Tonapetyan*, 242 F.3d at 1149

16  ("When confronted with conflicting medical opinions, an ALJ need not accept a treating

17  physician's opinion that is conclusory and brief and unsupported by clinical findings.").  Here, the

18  medical evidence was not entirely supportive of plaintiff's testimony.  Moreover, ALJ had, and

19  cited to, clear and convincing evidence supporting his finding that plaintiff's cognitive deficits

20  did not rise to the level necessary to support a finding of disability.  AR 19.

21          **C.   Cumulative Error**

22          As the court is unpersuaded that any reversible error occurred in the administrative

23  proceedings, there is no cause for remand based on cumulative error.

24  /////

25  /////

26  /////

27  /////

28  /////

1    **IV.    <u>Order</u>**

2         For the foregoing reasons, plaintiff's motion for summary judgment (ECF No. 16) is

3    DENIED, defendant's cross-motion for summary judgment (ECF No. 18) is GRANTED, and the

4    Clerk is directed to enter judgment in defendant's favor and close the case.

5    DATED:  December 13, 2021.

6

7                                                            EDMUND F. BRENNAN
                                                            UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28